IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TOULA PARASKEVAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 16 CV 9696 |
| v. | ) | |
| | ) | Hon. Charles R. Norgle |
| THOMAS E. PRICE,[1] as Secretary of the | ) | |
| United States Department of Health and | ) | |
| Human Services, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Toula Paraskevas ("Plaintiff") sues Defendant Thomas E. Price as the Secretary

of the United States Department of Health and Human Services ("Defendant," "Medicare," or

the "Secretary"). Plaintiff seeks a declaratory judgment that the Medicare Appeals Council

("MAC")[2] erred in holding that Medicare was entitled proceeds from Plaintiff's state court

settlement of a lawsuit regarding the medical treatment of her deceased husband's prostate

cancer. Before the Court are the parties' cross motions for summary judgment. For the reasons

set forth below, Defendant's motion is granted, and Plaintiff's motion is denied.

---

[1] The case was originally filed against Sylvia Burwell in her official capacity as the Secretary of the United States Department of Health. Since then, Thomas E. Price has become the Secretary and is therefore automatically substituted under Federal Rule of Civil Procedure 25(d).

[2] At times, the Court also refers to the MAC's decision as the Secretary of the United States Department of Health and Human Services' decision because the MAC's decision stands as the final decision of the Secretary. Wood v. Thompson, 246 F.3d 1026, 1029 (7th Cir. 2001) (stating that when the MAC adopts the ALJ's decision, that decision is the final decision of the Secretary).

# I. BACKGROUND

## A. The State Court Proceedings

Plaintiff is the surviving spouse of her deceased husband George Paraskevas ("George").[3]

George was diagnosed with prostate cancer in April 2007 and passed away on January 2, 2012.

Medicare is a federal program administered by the Centers for Medicare and Medicare Services,

which is a part of the Department of Health and Human Services. The program provides health

insurance to elderly and disabled individuals. Medicare is considered a Secondary Payer, which

renders payments made on behalf of a Medicare beneficiary conditional and subject to

reimbursement. Under the Medicare Secondary Payer ("MSP") statute, Medicare may seek such

reimbursement from the beneficiary if it has not received payment for medical expenses from a

primary plan such as group health insurance or liability insurance. Third-party tortfeasors are

also considered a primary plan from which Medicare may obtain reimbursements. From

George's diagnosis until his death, Medicare conditionally paid medical bills totaling

$253,546.73 on George's behalf.

In 2009, Plaintiff and her husband George filed a medical malpractice lawsuit in the

Circuit Court of Cook County, Illinois against George's primary care physician, his urologist,

and their respective practice groups. Plaintiff and George sought to recover for failure to

diagnose George's prostate cancer at an earlier time. After George's passing, Plaintiff was

appointed as the Special Administrator for George's estate. Plaintiff then filed a first amended

complaint in the state court, alleging the estate's survival claims pursuant to the Illinois Survival

Act ("ISA") and claims on behalf of the beneficiary's next of kin, Plaintiff and George's three

adult children, under the Illinois Wrongful Death Act ("IWDA").

---

[3] The Court refers to George Paraskevas by his first name in order to avoid confusion between him and Plaintiff.

In fall of 2012, Plaintiff tentatively settled the case with George's primary care physician and his practice group for $250,000 plus costs. Those defendants were dismissed from the case. However, they were again added to the case on September 11, 2013 after the tentative settlement broke down. On September 23, 2013, the state court granted the urologist and his practice group's motion to dismiss for failure to state a claim. The primary care physician and his practice group remained in the case. The state court also granted Plaintiff leave to file a second amended complaint; however, counsel failed to file the second amended complaint on account of what counsel called a "ministerial oversight." Administrative Record ("R.") at 9.

Plaintiff and the primary care physician continued to explore the possibility of settling the case, and in December 2013, they arrived at an agreement that the primary care physician and his practice group would pay $258,664.10. From this sum, $175,000.00 was to be distributed to the next of kin, with the remainder going towards attorneys' fees and other expenses. Notably, the settlement figure was the same amount as in the preliminary tentative settlement that eventually fell through. Plaintiff's counsel prepared the required documents for filing the settlement in the state court and requesting distribution of the settlement proceeds to the next of kin. Weeks later, Plaintiff realized her failure to file the second amended complaint. She obtained leave for a second time to file a second amended complaint. Plaintiff then filed the second amended complaint in order to eliminate the claims pursuant to the ISA, leaving only the IWDA claim remaining. In conjunction with the second amended complaint, Plaintiff filed what she called a "Motion to Approve Settlement and Distribution, to Confirm that Settlement is Made Exclusively Pursuant to the Wrongful Death Act, and To Dismiss." Id. at 10. The motion stated that the "settlement should be ascribed wholly to damages in the wrongful death action." Id.

Prior to finalizing the settlement, Plaintiff alerted Medicare's counsel as to the settlement proceedings. Plaintiff and Medicare also engaged in discussions about Medicare's potential entitlement to reimbursement from a settlement if the state court settlement negotiations indeed resulted in a finalized settlement. On February 3, 2014, the state court approved Plaintiff's settlement for $250,000 plus $8,664.10 in costs. The state court also approved the distribution of the proceeds. Although Plaintiff asserts that the state court made an express finding apportioning the settlement proceeds exclusively under the IWDA claim, that court simply signed the order verbatim as prepared by counsel and did so without any substantive hearing or consideration of the parties' filings.

## B. The Administrative Process

The Court first provides a brief overview of the statutory framework for context. "Title XVIII of the Social Security Act, 79 Stat. 291, as amended, 42 U.S.C. § 1395 *et seq.*, commonly known as the Medicare Act, establishes a federally subsidized health insurance program to be administered by the Secretary." Heckler v. Ringer, 466 U.S. 602, 605 (1984). After a beneficiary receives payment from a primary plan, the Secretary determines the reimbursement amount due from the beneficiary to be paid to Medicare. The Medicare Statute follows the administrative review process set forth in 42 U.S.C. § 405(b), after which judicial review is permitted in accordance with 42 U.S.C. § 405(g). See 42 U.S.C. § 1395ff(b)(1)(A). Beneficiaries may challenge the amount of reimbursement or seek waiver of any reimbursement amount. First, the beneficiary is required to ask that a Medicare Secondary Payer Recovery Contractor ("MSPRC") make a redetermination of the reimbursement demand. 42 U.S.C. § 1395ff(a)(3)(B)(i). Second, the beneficiary may seek another reconsideration; however, this reconsideration is conducted by a qualified independent contractor ("QIC"). 42 U.S.C.

4

§ 1395ff(c)(1)-(2); 42 C.F.R. § 405.960. Third, if the beneficiary remains unsatisfied with the determination, she may seek a hearing before an administrative law judge ("ALJ"). 42 U.S.C. § 1395ff(b)(1)(A); 42 C.F.R. § 405.1002. At the last step of the administrative process, the beneficiary may seek review of the ALJ's decision by the MAC. 42 C.F.R. § 405.1100. That decision is binding absent modification or reversal by a federal court. 42 C.F.R. § 405.1130.

On January 27, 2014, the MSPRC issued a final demand letter, seeking reimbursement in the amount of $171,537.04 in the event that Plaintiff settled her state court case. On February 10, 2014, Plaintiff appealed the MSPRC's final demand letter. There was a delay. The redetermination decision was not issued within the requisite sixty-day period. Due to that delay, Plaintiff filed a federal claim for declaratory relief. Another court in this District heard the case and dismissed the case for failure to exhaust administrative remedies.

Plaintiff proceeded through the administrative process and lost at every stage. On April 6, 2015, the MSPRC issued its redetermination decision upholding the original determination that Medicare was entitled to a $171,537.04 reimbursement. On September 16, 2015, Plaintiff exercised her right to again appeal the determination, this time by a QIC. On October 23, 2015, the QIC affirmed the reimbursement determination.

On November 19, 2015, Plaintiff requested that an ALJ hear her case. On January 6, 2016, the ALJ held a telephonic hearing. Plaintiff's counsel appeared on her behalf. The ALJ directly inquired as to the existence of a formal written agreement memorializing Plaintiff's state court settlement. Plaintiff's counsel represented that he believed there was a general release and that he would provide that release for the record. To the contrary, he could not do so. Rather, after the hearing concluded, Plaintiff submitted two affidavits obtained from her attorneys. The affidavits explicitly stated that Plaintiff's counsel and opposing counsel could not locate any

written settlement agreement, despite the fact that the settlement totaled roughly a quarter of a million dollars.

Finally, on March 30, 2016, Plaintiff requested that the MAC review the ALJ's decision. The MAC determined that Plaintiff attempted to convert her lawsuit containing survival and medical malpractice claims into a suit exclusively under the IWDA in order to shield herself from having to reimburse Medicare. The MAC also found that Plaintiff's counsel "did not document, in any way, [the] assertions that the matter was settled exclusively under the [IWDA]." R. 10 (internal quotation omitted). Moreover, Plaintiff made no mention and provided no explanation for the fact that the settlement recovery was identical to the amount of the preliminary settlement that fell apart. The MAC rejected Plaintiff's position that the state court made a determination on the merits when it signed the order stating that the lawsuit and settlement were pursuant to only the IWDA. Notably, the MAC found that there was nothing in the record that reflected whether the Illinois court ever held a hearing on this matter. On August 16, 2016, the MAC ultimately affirmed Medicare's entitlement to reimbursement but reduced the total dollar amount to $105,000.00 plus interest. Plaintiff now seeks for this Court to declare that the Secretary's final decision was error, so that she need not pay Medicare the $105,000.00 reimbursement amount.

## II. DISCUSSION

### A. Standard of Review

"Summary judgment is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Northfield Ins. Co. v. City of Waukegan, 701 F.3d 1124, 1128 (7th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "A genuine issue of

material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Wells v. Coker, 707 F.3d 756, 760 (7th Cir. 2013) (internal quotation marks and citation omitted). "On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." Payne v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). The general standards for summary judgment are unaltered by cross summary judgment motions: the Court "construe[s] all facts and inferences therefrom in favor of the party against whom the motion under consideration is made." Selective Ins. Co. of S.C. v. Target Corp., No. 16-1669, 2016 WL 7473786, at *2 (7th Cir. Dec. 29, 2016) (citation and quotation marks omitted).

As set forth above, the decision of the MAC is the final decision of the administrative review process. Wood v. Thompson, 246 F.3d 1026, 1029 (7th Cir. 2001) ("[T]he Medicare Appeals Council adopted the decision of the ALJ, that decision stands as the final decision of the Secretary."). This Court has the authority to review the MAC's decision under 42 U.S.C. § 405(g). Id. Where the Secretary's findings are supported by substantial evidence, those findings shall be conclusive. Id. If the Secretary denies a claim, "the [C]ourt shall review only the question of conformity with [the Secretary's] regulations and the validity of such regulations." Id. (citation and quotation marks omitted) (alteration in original). "'Substantial evidence' is 'more than a scintilla' but less than a preponderance of the evidence, and is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Kapusta v. Sullivan, 900 F.2d 94, 96 (7th Cir. 1989)).

In other words, the Seventh Circuit has explained that 42 U.S.C. § 1395 incorporates the familiar standard of review under the Administrative Procedure Act. Abraham Lincoln Mem'l

7

Hosp. v. Sebelius, 698 F.3d 536, 547 (7th Cir. 2012) ("Our review of the Secretary's decision on reimbursement matters...incorporates the standard of review from the APA"). Under that standard, reviewing courts only set aside agency decisions where they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;...[or] unsupported by substantial evidence..." Id. (quoting 5 U.S.C. § 706(2)) (alteration in original). Both the arbitrary and capricious and substantial evidence standards require a narrow or limited scope of review, and the Court is prohibited from substituting its own judgment for the agency's judgment. Id. (citing Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)). Furthermore, the Court owes deference to the agency, and the degree of deference is particularly warranted "when, as here, the Secretary is interpreting regulations issued pursuant to the complex and reticulated Medicare Act." Id. at 547-48 (citations, quotation marks, and brackets omitted).

There are genuine no issues of material fact in this case. The case turns solely on a legal determination as to whether the MAC's decision is supported by substantial evidence. Because this matter of law is outcome determinative for both motions for summary judgment, the Court addresses the parties' arguments simultaneously.

## B. Substantial Evidence Supports the MAC's Finding That the State Court Settlement Included Compensation for Claims Under the IWDA and the ISA

As a threshold matter, the Court notes that Defendant does not dispute Plaintiff's contention that Defendant cannot recover from claims brought pursuant to the IWDA. The parties' summary judgment motions therefore turn on whether the Secretary was correct in determining that actions other than the IWDA claim were in play in the state court lawsuit.

Plaintiff argues that the MAC erred in determining that Medicare could collect reimbursement money from Plaintiff's state court settlement because the MAC ignored the state

8

court's order. Plaintiff contends that the state court's order "expressly found that '100% of the settlement is apportioned to [P]laintiff's wrongful death claim.'" Pl.'s Brief in Supp. of Mot. for Summ. J. ("Pl.'s Br.") at 3 (quoting R. 56 ¶ 16). The argument develops relatively little support, as it relies mostly on the uncontested position that Medicare cannot reach proceeds from an IWDA claim in order to obtain a reimbursement. Outside of that point, Plaintiff merely asserts that the state court issued an order that "was substantive in nature, and was a judicial determination of the rights of the parties," id. at 8, that the MAC could not ignore.

Plaintiff's position is a half-truth, and her assertion that the MAC ignored the state court order is unfounded. First, as Plaintiff concedes, the MAC directly confronted the state court order when it decided that the order "was not on the merits." Id. The MAC based that decision upon the Third Circuit's findings in Taransky v. Sec'y of U.S. Dep't of Health & Human Servs., 760 F.3d 307 (3rd Cir. 2014). Plaintiff's sole argument against the MAC's application of Taransky is that the Taransky court found that the state court order at issue was not an order on the merits because it did not adjudicate any substantive issue in the case and instead, merely rubber stamped the plaintiff's requested order in an uncontested order. Pl.'s Br. at 8 (citing Taransky, 760 F.3d at 318-19). Plaintiff's argument goes on to assert, absent any record or legal support, that the state court in this case made a substantive adjudication on the merits. No transcript of any court hearing has been provided. The MAC relied on ample evidence that Plaintiff disguised recovery for survival claims in connection with medical malpractice, correctly found that the state court did not address the merits of the case, and therefore reasonably determined that the state court rubber stamped the order prepared by Plaintiff.

**i. Pertinent Medicare Act Framework**

"A primary plan's responsibility for [reimbursements] may be demonstrated by…a payment conditioned upon the recipient's promise, waiver, or release *(whether or not there is a determination or admission of liability)* of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means." Taransky, 760 F.3d at 314 (quoting 42 U.S.C. § 1395y(b)(2)(B)(ii)) (emphasis in original). The Medicare Manual additionally states that "Medicare policy requires recovering payments from liability awards or *settlements*…without regard to how the settlement agreement stipulates disbursements should be made. That includes situations in which the settlements do not expressly include damages for medical expenses." Id. (quoting MSP Manual, Ch. 7, § 50.4.4) (emphasis in original). Thus, a settlement releasing a tortfeasor from claims for medical expenses is enough to show that a beneficiary is obliged to reimburse Medicare. Id. at 315 (internal citation omitted). The scope of that obligation "is ultimately defined by the scope of the beneficiary's *own claim against the third party* that is later released in the settlement." Id. (internal citation, quotation marks, and alteration omitted) (emphasis in original). "This rule comports with the text of the MSP Act and the Medicare Manual [and] ensures that a beneficiary cannot tell a third party that it is responsible for all of his medical expenses, on the one hand, and later tell Medicare that the same party was responsible for only a compromise percentage of them, on the other hand." Id. (internal citation, quotation marks, and alteration omitted).

"Under the MSP Manual, '[t]he only situation in which Medicare recognizes allocations of liability payments to nonmedical losses is when payment is based on a court order *on the merits* of the case.'" Id. at 318 (quoting MSP Manual, Ch. 7, § 50.4.4) (emphasis and alteration in original). If the "adjudicator of the merits specifically designate[s] amounts…not related to

medical services, Medicare will accept the Court's designation." Id. (quoting MSP Manual, Ch. 7, § 50.4.4) (internal quotation marks omitted) (alteration in original). "In deference to the court's substantive decision, 'Medicare does not seek recovery from portions of the court awards that are designated as payment for losses other than medical services.'" Id. (quoting MSP Manual, Ch. 7, § 50.4.4). Thus, in this case, Plaintiff can prevail only if there is not substantial evidence supporting a finding that: (1) the settlement compensated Plaintiff for medical services—that is, the ISA claims; or (2) that the state court did not adjudicate the case on the merits when signing the order indicating that the settlement only related to the wrongful death claim.

### ii. The MAC Carefully Assessed Considerable Evidence That the State Court Settlement Included Survival Claims Additional to the Wrongful Death Claim

After settling the case, the plaintiff in Taransky filed a motion requesting an order apportioning settlement proceeds in a particular manner. See Taransky, 760 F.3d at 311. The MAC upheld the ALJ's refusal to recognize the state court's settlement allocation order because that order was not made on the merits of the case. Id. at 312. Instead, the MAC, like the ALJ, "was unconvinced that the settlement truly did not include damages for medical expenses." Id. Thus, Medicare could obtain reimbursement from the settlement because, as stated above, Medicare may do so where a settlement "releases a tortfeasor from claims for medical expenses." Id. at 315.

Here, the evidence supports the MAC's finding that the settlement did not compensate Plaintiff exclusively for her IWDA claim. In other words, sufficient evidence exists to support the MAC's decision that the settlement also included recovery for the survival claims related to medical expenses. Plaintiff originally brought suit in the state court for medical malpractice negligence claims. After George passed away, Plaintiff maintained these claims under the ISA.

11

The state court suit of course involved the IWDA claim, but Defendant correctly points out that from the time Plaintiff filed suit until just before finalization of the settlement, the claims seeking damages related to medical expenses—that is, the claims which Medicare may reach for reimbursement—existed as part of the litigation. In fact, Defendant points out that, at the time Plaintiff entered into the final settlement agreement, the operative complaint still contained both the wrongful death claim and the survival claims. Def.'s Brief in Supp. of Mot. for Summ. J. and in Opp. to Pl.'s Mot. for Summ. J. ("Def.'s Br.") at 13. The MAC explicitly considered these points in its decision when it stated that "[n]otably, [Plaintiff's] counsel made this request [for the settlement to be exclusively pursuant to the IWDA] in a motion filed with the court while the complaint in the lawsuit…contained claims for both survival/medical malpractice and wrongful death." R. 17. Thus, the circumstances surrounding Plaintiff's settlement bears a strong resemblance to the <u>Taransky</u> case. There was substantial evidence upon which the MAC could rely in its finding that the settlement did not include proceeds exclusively for a wrongful death claim. The MAC fairly weighed this evidence in its finding that Plaintiff sought to cloak recovery for the survival claims in terms of wrongful death.

The preliminary settlement that fell through provides further evidence in support of the administrative findings. In the fall of 2012, Plaintiff reached a tentative settlement for $250,000 plus costs. That settlement included compensation for claims under both ISA and IWDA. Plaintiff represented in the administrative proceedings that she continued to pursue the same settlement agreement subsequent to the breakdown during the finalization of the initial settlement. On September 23, 2013, the state court granted Plaintiff leave to file a second amended complaint. Plaintiff, however, failed to file that complaint due to what counsel described as a "ministerial oversight." <u>Id.</u> at 9, 17 (internal citation and quotation marks

omitted). In December 2013, the parties in the state court suit reached a settlement for an amount identical to that which they had agreed upon in the initial settlement that broke down.

Only at this juncture did Plaintiff file her long-delayed second amended complaint dropping the ISA claims and leaving only the IWDA claim. Plaintiff also filed what she termed a "Motion to Approve Settlement and Distribution, to Confirm that Settlement is Made Exclusively Pursuant to the Wrongful Death Act, and To Dismiss." Id. at 10. The MAC expressly considered the fact that the only distinction between the two settlements was the elimination of the medical malpractice/survival claims through which Medicare could be reimbursed. Specifically, the MAC's decision stated that Plaintiff's "counsel [did not] mention or explain the fact that the settlement recovery...was the same as the settlement it had almost obtained earlier for a lawsuit that combined the medical malpractice and wrongful death claims." Id. at 11; see also id. at 16 (discussing that the two settlements were for the same amount of money); id. at 17-18 ("Nor have appellants explained the relationship between the settlement they negotiated in the fall of 2012 for $250,000 for both medical malpractice and wrongful death claims and the $250,000 settlement they negotiated in December 2013, which they now claim is entirely for wrongful death claims.").

Moreover, Plaintiff's counsel essentially conceded before the ALJ that the settlement included compensation for the survival claims in connection with medical malpractice. As the MAC explained, "statements by [Plaintiff's] counsel contradict their characterization of the case that they settled as one 'exclusively under the [IWDA].' At the ALJ hearing...[Plaintiff's] counsel stated in his opening description of the case: 'The parties settled the *medical malpractice lawsuit* for a total of $258,664.10....'" Id. 18 (emphasis in original).

13

Plaintiff attempts to write off this concession, citing to Young v. McKiegue, 708 N.E.2d 493 (Ill. App. 1st Dist. 1999) for the proposition that medical malpractice lawsuits refer "to any lawsuit alleging negligence against a medical professional, even if it is only brought under the [IWDA]." Pl.'s Br. at 9. Plaintiff's argument rests on the Young court's wrongful death statute of limitations analysis. The court stated that the IWDA two-year statute of limitations is not applicable "where the wrongful death claim is predicated upon a claim of medical malpractice that was not apparent to the plaintiff at the time of death." Young, 708 N.E.2d at 498. Rather, because a plaintiff in that situation did not know of the claim and had no reason to know of the claim through the exercise of reasonable diligence, the wrongful death statute borrows the "discovery rule" from the medical malpractice statute of limitations. See id. at 498-99.

The Court finds Plaintiff's argument unpersuasive. First, in this case, there is no argument that at the time of death the medical malpractice was not known nor does the case have anything to do with the statute of limitations. The analogy is therefore factually inapt. Second, Plaintiff has failed to draw any connection between the statute of limitations exception explained in Young and the classification of medical malpractice and IWDA actions. The IWDA having an exception under which it borrows the limitations period of a malpractice claim does not *ipso facto* render it an IWDA claim. If IWDA and malpractice claims were the same, there would be no reason for the two laws to have two separately stated legislature-mandated statutes of limitations. Even assuming the medical malpractice and IWDA claims had precisely the same statutes of limitations, the analogy would fail. Take, for example, the fact that Illinois has a two-year statute limitations for personal injuries. Kalimara v. Illinois Dep't of Corr., 879 F.2d 276, 277 (7th Cir. 1989). No one would suggest that the shared limitations period renders every personal injury claim the same claim. Plaintiff would not say that she settled an intentional

14

infliction of emotional distress claim and then later suggest that, in so stating, she did not

concede that she was not settling a battery action just because they both happen to be personal

injury claims that share a statute of limitations.[4]

Finally, even assuming Plaintiff's argument were correct, her case itself rests on her

ability to show that the settlement was only for her wrongful death claim, even if the wrongful

death claim were a form of medical malpractice. Counsel referred to the settlement as one for

survival claims related to medical malpractice. Counsel's job in this case was to distinguish the

IWDA claim from the ISA claims and show that the settlement only pertained to the IWDA

claim. Instead of doing so, counsel explicitly stated the contrary, providing evidence that even

Plaintiff believed that the parties settled a medical malpractice cause of action (at that point an

ISA lawsuit) in addition to the wrongful death claim. Counsel's representation before the ALJ

weighs strongly against Plaintiff's disingenuous attempt to characterize the settlement as one

pursuant to only the IWDA.

In light of the foregoing analysis, the MAC fairly weighed the evidence in finding that

the true nature of the settlement was to compensate Plaintiff for both the wrongful death claim

and the survival claims in connection with medical malpractice. For this Court to find otherwise

would be a substitution of judgement based upon a reweighing of the evidence.

---

[4] As personal injury torts, intentional infliction of emotional distress and battery both have two-year statutes of limitations in Illinois. Feltmeier v. Feltmeier, 207 798 N.E.2d 75, 85 (2003) ("We agree that the applicable statute of limitations for intentional infliction of emotional distress is two years, because the tort is a form of personal injury."); Montague v. George J. London Mem'l Hosp., 396 N.E.2d 1289, 1293 (Ill. App. 1st Dist. 1979) ("Therefore, plaintiff's injuries are properly classified as false imprisonment, assault, battery or medical malpractice, and are subject to the two-year statute of limitations."); Protich v. Will Cty. Health Dep't, a div. of Will Cty., No. 02 CV 4796, 2002 WL 31875461, at *1 (N.D. Ill. Dec. 24, 2002) (finding state common law claims for intentional infliction of emotional distress and battery stale pursuant to Illinois' general two-year limitations period for personal injury actions).

**iii. Defendant Was Entitled to Make Its Own Determination That the Settlement Included Survival Claims Additional to the Wrongful Death Claim Because the State Court Order Was Not on the Merits Rendering the Order Non-Binding**

The preceding notwithstanding, the Court must also examine whether the state court order was on the merits. If the state court order was on the merits, the order binds Defendant and prevents Defendant from reaching the settlement proceeds. The state court order—uncontested and pre-prepared by Plaintiff for submission to approve the settlement—stated that the "settlement should be apportioned 100% to the Wrongful Death claim." R. 18. Despite the language of the order, Plaintiff has done nothing to show that the MAC erred in following Taransky's guidance.

The Taransky court found that the ALJ in that case correctly decided that the state court apportionment was not on the merits, so Medicare did not need to recognize the order. 760 F.3d at 318. The court stated that to be on the merits, the order must be "delivered after the court has heard and evaluated the evidence and the parties' substantive arguments." Id. (internal citation and quotation marks omitted). However, in that case, the state court merely "rubber stamped [the plaintiff's uncontested] request...submitted by [plaintiff's] counsel for the judge's signature." Id. at 318-19. Thus, the state court did not decide any substantive issues in the underlying negligence lawsuit, so the allocation order in connection with the settlement agreement was not on the merits. Id.

Here, the case unfolded similarly. First, Plaintiff failed to show that the state court even held a hearing. R. 12 ("The administrative record does not reflect whether the Illinois court held a hearing; and if so, what transpired."). In fact, the MAC specifically pointed out that the case "had never been litigated" outside of the state court judge granting the urologist's motion to dismiss. Id. at 19. Plaintiff's reply brief cites the IWDA provision requiring a trial judge to

conduct a hearing to calculate the amount of damages to be awarded to each beneficiary. Pl.'s Reply at 4 (citing 740 ILCS 180/2). 740 ILCS 180/2(i) provides that "[t]he trial judge shall conduct a hearing to determine the degree of dependency of each beneficiary upon the decedent. The trial judge shall calculate the amount of damages to be awarded each beneficiary, taking into account any reduction arising from either the decedent's or the beneficiary's contributory fault." Defendant correctly points out that the statute did not require the judge to make an allocation determination with respect to *medical versus nonmedical* damages between the ISA and IWDA claims in a *hearing evaluating the evidence and the parties' substantive arguments.* Moreover, Plaintiff fails to point to any evidence in the record that the statutorily required hearing ever took place or that state court even considered any substantive written submission. The lack of any hearing or adversarial process between the parties to the settlement provides strong evidence that the state court never considered the merits of this case.

Second, Plaintiff crafted her court filings in an attempt to dodge the Medicare Act's reimbursement requirements. For example, the motion in its title explicitly stated the settlement "is Made Exclusively Pursuant to the Wrongful Death Act." R. 10. The motion directly asserted that the "settlement should be apportioned 100% to the Wrongful Death claim," and, as though Plaintiff had the legal authority to determine Medicare's rights, that Medicare had no "cognizable claim for medical expenses against the settlement proceeds allocated [by the settlement agreement]." Id.

However, as noted above, Plaintiff's failure to point to anything in the record that might show that the state court considered these matters delivers a blow to her position. On the other hand, the MAC found that Plaintiff's "counsel did not document, in any way, these assertions that the matter was settled exclusively under the Illinois Wrongful Death Act, and that Medicare

17

did not have a cognizable claim to recover conditional payments for medical care." R. 10-11.

Indeed, Plaintiff could not even produce a written settlement agreement during the administrative proceedings. Moreover, prior to finalizing the settlement, Plaintiff expressly discussed her potential reimbursement obligations with Medicare should her settlement agreement come to fruition. The MAC therefore had legitimate reason to find that Plaintiff's express, self-serving representation that settling the case exclusively under the IWDA "was necessary in order prevent Medicare from recovering any of its conditional payments," id. at 19, showed that such a characterization was not a merit-based decision by the state court judge. See Taransky, 760 F.3d at 312 (finding state court order non-binding and noting that "Taransky's counsel—who repeatedly demanded confirmation of the amount of Medicare's lien—had used Medicare's payments as a basis for the settlement").[5]

Third, the MAC reasoned that nothing in the record—the state court order or otherwise—indicated that Plaintiff "informed the state court judge that the litigation was filed, pursued, and previously settled based on medical malpractice claims as well as wrongful death claims." R. 19. Plaintiff argues against the MAC's finding on the basis that the same state court judge presided over the case from start to finish. However, as discussed above, the MAC also reasoned that the case was not litigated in any manner before the Court other than the dismissal of the urologist and his practice. Thus, the MAC reasonably considered the state court judge's lack of familiarity with the procedural history of the case or previous settlement negotiations as a factor indicating that the state court order was not on the merits.

Fourth, Plaintiff's counsel prepared the order for the court to sign, and the order was unopposed. The lack of any opposition to the settlement apportionment—or anything Plaintiff

---

[5] The Court notes that this also shows that the settlement was intended to compensate George's next of kin for the survival claims because Plaintiff's artful language indicates that Plaintiff was aware that Medicare was entitled to these settlement proceeds.

18

included in the order, for that matter—coupled with the state court signing the order verbatim also indicates that the state court did not adjudicate the matter on the merits.

The foregoing analysis shows that Plaintiff has failed to demonstrate that the state court "heard and evaluated the evidence and the parties' substantive arguments" as required for a finding that the state court order was on the merits. Taransky, 760 F.3d at 318. To the contrary, there is nothing in the record that shows the state court held any hearing, and all of the evidence indicates that the parties never even made substantive arguments. Just like Taransky, Plaintiff sought an order apportioning the settlement on her own preferred terms, and just like Taransky, there is no basis upon which to find that the state court adjudicated the apportionment order on the merits. Rather, the evidence weighed by the MAC showed that "[t]he state court in this case also rubber stamped [Plaintiff's] request for settlement approval and an allocation to wrongful death claims only." R. 20.

Finally, the Court rejects Plaintiff's contention that this case is controlled by Bradley v. Sebelius, 621 F.3d 1330 (11th Cir. 2010), rather than Taransky. In that case, the Secretary declined to follow a state court order on the merits. Bradley, 621 F.3d at 1334. Importantly, the state probate court in Bradley explicitly stated that it ordered apportionment based on a substantive hearing with sworn testimony, the court's own experience, and a prioritization of the recovery. Id. at 1333-34. Nonetheless, the Secretary asserted that the "probate court's decision was merely advisory in nature or superseded by federal law." Id. at 1334. Here, as set forth more fully above, there is no evidence of a hearing or the court implementing a decision based upon its own experience or its own prioritization of recovery. The case provides no support for Plaintiff's position.

In light of the above discussion, the Court finds that substantial evidence supports the MAC's determination that Medicare is entitled to obtain reimbursement through the state court settlement proceeds. Summary judgment in favor of Defendant is therefore proper.

## C. Defendant Did Not Waive Any Objection to the State Court Order By Failing to Intervene and Participate in the State Court Proceedings

Plaintiff argues that Defendant waived its opportunity to pursue reimbursement by failing to intervene and participate in the state court proceedings. Plaintiff asserts that Medicare had the right to intervene and that Plaintiff provided Medicare with a copy of the motion to approve the settlement and distribution of the settlement proceeds. The argument concludes that, having failed to object in the state court, Medicare is now barred from challenging the allocation of 100% of the settlement proceeds to the wrongful death claim. Plaintiff is mistaken; the right to intervene and the duty to intervene are two distinct concepts.

Plaintiff's lone citation to <u>Bradley</u> lends no support. She relies on the Eleventh Circuit's finding that because "[t]he Secretary declined to take any part in the [state court] litigation although at all times [the Secretary's] position was adverse to the interests of the surviving children," the Secretary was required to follow the probate court's decision. <u>Id.</u> at 1338. However, the <u>Bradley</u> court concluded that "the deference given to the language in the field [MSP] *in this case* by the Secretary and the district court is misplaced." <u>Id.</u> (emphasis added). As set forth above, the probate court in <u>Bradley</u>, unlike the state court in Plaintiff's case, clearly made a decision on the merits of the case. Having done so, the Secretary had no choice but to follow the state court's order. Because the state court did not issue the order in this case on the merits, <u>Bradley</u> provides no support for Plaintiff's contention.

Defendant asserts that the MAC properly denied Plaintiff's waiver argument because "neither the Medicare Secondary Payer statute nor its implementing regulations require

[Defendant] to intervene in the state court proceedings when settlement approval motions are filed." Def.'s Br. at 15-16 (quoting R. 20). As an initial matter, Defendant correctly identifies that Taranksy supports the MAC's decision. In fact, the MAC relied on the Taransky court's explicit language. Taransky, 760 F.3d at 319 ("neither the [Medicare Act] nor its implementing regulations require the Government to intervene in state proceedings where such post-settlement allocation motions are made").

Moreover, Plaintiff's own statements belie her waiver contention. In her motion to approve the settlement, "she represented to the state court…that the state 'does not enjoy jurisdiction over Medicare to adjudicate its lien because it would entail a state court adjudicating a federal agency's federal rights pursuant to a federal statute.'" Def.'s Br. at 16 (quoting R. 114 ¶ 14). In her submission to this Court, Plaintiff stated that "the Secretary is correct that Medicare was not required to intervene in the state court...." Pl.'s Reply at 7. Instead of legal authority, she relies on what she believes is the disingenuousness of Defendant's choice "not to participate in the [state] court hearing" and then proceed to disagree with the state court order. Id. Perhaps Defendant rolled the dice on waiver in terms of leaving it to chance that the state court judge might rule on the merits. Or, maybe by not participating in the state court proceedings, Defendant was willing to live with a state court decision *on the merits*—substantive judicial analysis—that 100% of the settlement proceeds should go to the wrongful death action. These possibilities, however, are not concessions by Defendant that Defendant would have no beef with Plaintiff's self-serving allocation determination absent any meaningful consideration by a judicial body. The MAC did not err in in finding that a federal body was not bound by a state court in the federal body's application of federal law and therefore did not abuse its discretion.

**D. Defendant Had a Statutory Basis Upon Which to Rely for Seeking Reimbursement Subsequent to a State Court Order**

Similar to the waiver argument, Plaintiff asserts that there is no authority in the first instance authorizing Defendant to disagree with "the ruling of a state court proceeding for which Medicare received notice and was invited to participate." Pl.'s Br. at 7; see also Pl.'s Reply at 2 (Defendant's "analysis finds no support in the [Medicare Act] or accompanying regulations, but rather is based upon the Medicare Secondary Payer Manual which provides that the only situation in which Medicare recognizes allocation of liability payments to nonmedical losses is when payment is based on a court order on the merits of the case.") (internal citation and quotation omitted). Plaintiff's position is error.

As an initial matter and as noted above, the Medicare Act allows for reimbursement recovery from a tortfeasor. Taransky, 760 F.3d at 315 ("[T]he fact of settlement alone, if it releases a tortfeasor from claims for medical expenses, is sufficient to demonstrate the beneficiary's obligation to reimburse Medicare."). Obviously, in this case, Defendant seeks reimbursement from Plaintiff's settlement with a tortfeasor.

Pertinent authority provides Defendant with the power to seek reimbursement in this case, even though doing so may be at odds with the language of the state court order in the absence of any further context. The legislature has not directly spoken as to this issue in the Medicare Act. It follows that the MAC made a proper determination provided that its decision falls within a permissible construction of the statute. See White v. Scibana, 390 F.3d 997, 1000 (7th Cir. 2004), as amended (Feb. 14, 2005) ("[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.") (quoting Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 843 (1984)); see also N.L.R.B. v. United Food & Commercial

22

Workers Union, Local 23, AFL-CIO, 484 U.S. 112, 123 (1987) (NLRA case stating that courts accord deference with regard to administrative body's interpretation where the interpretation is rational and consistent with the statute). Plaintiff has provided no support for finding that the MAC's decision was not reasonable and consistent with the Medicare Act and its goals, so the MAC's determination is permissible.

Defendant explains that the purpose of the statute was to reduce Medicare costs and that full recovery of conditional payments made by Medicare would serve that goal. Def.'s Reply at 5-6. Defendant looks to Zinman v. Shalala, 67 F.3d 841 (9th Cir. 1995) for support. In that case, the Ninth Circuit noted that "the statute does not address the issue of apportioned recovery of conditional Medicare payments, either by its language or by its structure." Id. at 845. The court explained that the Secretary's "[r]eading [of] the [] legislation to allow full reimbursement of conditional Medicare payments even though a beneficiary receives a discounted settlement from a third party is a rational construction of the statute. It is also consistent with the statute's purpose. The transformation of Medicare from the primary payer to the secondary payer with a right of reimbursement reflects the overarching statutory purpose of reducing Medicare costs." Id. The court found that this interpretation serves end of reducing Medicare costs by avoiding "the commitment of federal resources to the task of ascertaining the dollar amount of each element of a victim's alleged damages." Id. This authority persuades the Court that Defendant's construction of the statute is rational. That is, Defendant's recognition of a state court's allocation of liability payments only when the allocation is a decision on the merits is consistent with the statute's goal of enabling Medicare to obtain full reimbursement. Therefore, Defendant's interpretation was permissible.

Defendant's also properly relied on the Medicare Secondary Payer Manual.

Plaintiff is correct that the Manual does not have the force of law. See Shalala v. Guernsey Memorial Hosp., 514 U.S. 87, 99 (1995) (referring to the Medicare Provider Reimbursement Manual as "a prototypical example of an interpretive rule [which] does not have the force and effect of law and [is] not accorded that weight in the adjudicatory process"). However, even without the force of law or even full Chevron deference,[6] the manual still provides substantial guidance. See Fed. Exp. Corp. v. Holowecki, 552 U.S. 389, 399 (2008) ("Assuming [the agency's interpretive policy statements] are not entitled to full Chevron deference, they do reflect a body of experience and informed judgment to which courts and litigants may properly resort for guidance.") (internal citation and quotation marks omitted). As the Seventh Circuit has expressly stated, the Medicare Secondary Payer Manual "is best viewed as an administrative interpretation of regulations and corresponding statutes, and as such it is entitled to considerable deference as a general matter." Daviess Cty. Hosp. v. Bowen, 811 F.2d 338, 345 (7th Cir. 1987) (internal citation and quotation marks omitted). Thus, Defendant was entitled to interpret its own regulations (including the manual), those regulations were entitled to some level of deference, and Defendant's ultimate interpretation was reasonable and consistent with the Medicare Act. It follows that the Secretary's final decision was not an abuse of discretion.

## IV. CONCLUSION

In sum, Defendant had statutory authority through which Defendant could seek reimbursement. Additionally, Defendant, as a federal body implementing federal law, did not waive its objections by not appearing in the state court proceedings. Defendant also did not abuse its discretion in finding that the state court order was not on the merits and had sufficient evidence upon which to rely in determining that the state court settlement compensated Plaintiff

---

[6] As noted throughout this opinion, pursuant to Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), courts defer to agency interpretations unless they are unreasonable.

for not only the wrongful death action, but also the ISA claims in connection with medical malpractice. Because the MAC's determinations were supported by substantial evidence, Plaintiff's motion for summary judgment is denied, and Defendant's motion for summary judgment is granted. The MAC's decision is affirmed, and the Secretary's final decision stands.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: November 27, 2017

RECEIVED-E04
17 NOV 28 AM 8:22
CLERK
U.S. DISTRICT COURT